# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| T-MOBILE USA, INC., a Delaware Corporation, | § § § | |
| Plaintiff, | § § § | CASE NO.: _____ |
| v. | § § | **JURY TRIAL DEMANDED** |
| CELLIMPORTS LLC, a  New Jersey limited liability company; JASVINDER S. VIRDI, individually; JOHN DOES 1-10; and XYZ COMPANIES 1-10, | § § § § § | |
| Defendants. | § § § | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND JURY DEMAND

Plaintiff T-Mobile USA, Inc., a Delaware corporation ("T-Mobile"), hereby files this Complaint for Damages and Injunctive Relief and sues Defendants Cellimports LLC and Jasvinder S. Virdi (collectively "Defendants"), and states:

### INTRODUCTION AND BACKGROUND

1.     This is an action for damages and injunctive relief arising out of Defendants' unlawful business enterprises that willfully infringe T-Mobile's trademark and other rights related to T-Mobile's prepaid wireless service and T-Mobile's specially-manufactured wireless telephones designed for use with T-Mobile's prepaid wireless service and related activation materials.

1.     As set forth in greater detail below, Defendants are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of T-Mobile prepaid wireless telephones ("Prepaid Phones" or "Phones") and Subscriber Identity Module ("SIM") cards, unauthorized and unlawful computer unlocking of T-Mobile Prepaid Phones, alteration of copyrighted and proprietary software computer code installed in the Phones for T-Mobile, and trafficking of the Phones and SIMs for profit (the "Subsidy Theft Scheme").

2.     Defendants perpetrate their Subsidy Theft Scheme by acquiring large quantities of T-Mobile Prepaid Phones from retail stores such as Wal-Mart, Target, and Best Buy, and by soliciting others to purchase T-Mobile Prepaid Phones in large quantities for the benefit of Defendants.  Upon information and belief, Defendants remove the T-Mobile Prepaid Phones' original packaging and accessories, copies of the written warranties and ownership manuals, sell the SIM cards for fraudulent activation, and ship the phones domestically and/or overseas, unlocked or to be unlocked, for resale.

3.     Defendants acquire the T-Mobile Prepaid Phones with the knowledge and intent that the Phones will not be activated for use on the T-Mobile prepaid wireless network.  Instead, the Phones are computer-hacked.  The purpose of this hacking, known as "unlocking," is to disable software installed in the Phones by

the manufacturers at the request and expense of T-Mobile, which enables the activation of the T-Mobile Prepaid Phones exclusively on T-Mobile's wireless system.   The purpose of the software is to allow T-Mobile to offer the Prepaid Phones at a discount to the consumer while protecting T-Mobile's subsidy investment in the Phone.   Upon information and belief, the illegally unlocked Phones are trafficked and resold as new by Defendants, at a premium, under the T-Mobile trademarks.   Additionally, the SIM cards packaged with the Prepaid Phones, which provide free airtime to new T-Mobile prepaid customers, are sold in bulk for the purpose of illegally obtaining free airtime through fraudulent activation.

4.     T-Mobile permits its legitimate customers to unlock their Prepaid Phones upon request and if certain conditions are satisfied, including prior activity on the Phones.   Defendants and others who seek to improperly unlock Prepaid Phones for the purpose of illicitly profiting from their fraudulent resale are prohibited from doing so.

5.     In an effort to prevent these unlawful business practices, T-Mobile retailers have, at T-Mobile's direction, implemented policies limiting the number of T-Mobile Prepaid Phones an individual may purchase on a daily basis. Defendants, through their Subsidy Theft Scheme, have taken steps to circumvent

these policies by, among other things, employing large numbers of "Runners" to make multiple purchases of T-Mobile Prepaid Phones on behalf of Defendants.

6.      Defendants' conduct, together with that of currently unknown civil and criminal co-conspirators, is causing T-Mobile to suffer millions of dollars in losses and has caused immediate and irreparable injury to T-Mobile and the T-Mobile Marks.

7.      All conditions precedent to filing this action have been performed, waived or excused.

8.      T-Mobile has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION AND VENUE

9.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

10.      T-Mobile is a Delaware corporation, with its principal place of business in Bellevue, Washington.

11.      Cellimports LLC is a New Jersey business entity with its principal place of business located at 11 Aimy Ct., Matawan, New Jersey 07747-9668.

12.      Jasvinder S. Virdi is a resident of the state of New Jersey, and has conducted business, and continues to conduct business, through Cellimports LLC at 11 Aimy Ct., Matawan, New Jersey 07747-9668.

4

13.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because T-Mobile's claims for violations of the United States Trademark Act, Title 15 of the United States Code, arise under federal law, and because T-Mobile and Defendants are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest, fees, and costs.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over T-Mobile's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

14.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b) because the individual Defendant resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## T-MOBILE'S BUSINESS MODEL

15.    Based in Bellevue, Washington, T-Mobile USA, Inc., is a member of the T-Mobile International group, one of the world's leading companies in mobile communications, and the United States mobile telecommunications subsidiary of Deutsche Telekom AG.

16.    At the end of March 2007, nearly 110 million mobile customers were served by companies of the Deutsche Telekom group — 26 million by T-Mobile USA — all via a common innovative technology platform based on GSM, the world's most successful digital wireless standard. Multiple independent research

5

studies rank T-Mobile highest, in numerous regions throughout the United States, in wireless call quality and wireless customer care.  T-Mobile highly values the outstanding business reputation it has worked hard to develop.

17.     T-Mobile's prepaid program enables its customers to prepay for their wireless service by purchasing T-Mobile airtime cards and specially-manufactured wireless Phones.  The SIM cards that come with the Prepaid Phones provide free introductory minutes that are available upon activation.  Customers load refill airtime into their T-Mobile Prepaid Phones using codes generated from PIN numbers found on the airtime cards.  In addition to being available through T-Mobile online and in its stores, T-Mobile Prepaid Phones and airtime cards are sold through major national retailers such as Wal-Mart and Target.  T-Mobile Prepaid Phones function both in the United States and abroad.

18.     T-Mobile's business model is based upon T-Mobile's ability to deliver an affordable product to its consumers.  Therefore, T-Mobile subsidizes its customers' acquisition of the T-Mobile Prepaid Phones by selling its Phones for substantially less than the Phones cost T-Mobile.  T-Mobile recoups this subsidy through profits earned on the sale of the T-Mobile prepaid airtime cards that are required to make and receive calls on the T-Mobile Prepaid Phones.  T-Mobile is able to offer its Prepaid Phones to customers at reduced prices only if the Phones are used as intended on the T-Mobile prepaid wireless network.

19.     Manufacturers that produce wireless phones for T-Mobile install proprietary software, requested and paid for by T-Mobile, into the T-Mobile Prepaid Phones.  The T-Mobile software locking devices prevent T-Mobile Prepaid Phones from being used without loading airtime minutes from a T-Mobile prepaid airtime card.

## T-MOBILE'S TRADEMARK RIGHTS

20.     Deutsche Telekom AG owns the standard character mark T-Mobile and a stylized T-Mobile Mark (collectively, the "T-Mobile Marks") as depicted below:



21.     As a wholly-owned subsidiary of Deutsche Telekom AG, Plaintiff has been assigned the right to use the T-Mobile Marks and obtained the right to enforce said rights.

22.     Plaintiff uses the T-Mobile Marks on and in connection with telecommunications services.

## TERMS AND CONDITIONS REGARDING THE
## USE OF T-MOBILE PREPAID PHONES

23.     T-Mobile Prepaid Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones.  A copy of the Terms and Conditions is attached as **Exhibit A**.

These Terms and Conditions are set forth in printed inserts that are included in the packaging of every T-Mobile Prepaid Phone. The Terms and Conditions and language on the packaging constitute a valid binding contract.

24.     Limitations set out in the Terms and Conditions are intended to restrict the use of T-Mobile Phones to T-Mobile's wireless network. However, legitimate T-Mobile customers may request an unlock code from T-Mobile's customer relations department, and will receive assistance with unlocking their Phones if certain conditions are satisfied, including prior activity on the Phone.

## DEFENDANTS' MISCONDUCT

25.     T-Mobile has discovered that, although large quantities of its Prepaid Phones are being purchased at retailers throughout the United States, a significant number of these Phones are not being activated for use on the T-Mobile network.

26.     Instead, entities and individuals such as Defendants are purchasing and fraudulently reselling T-Mobile Prepaid Phones in bulk quantities. The Phones are taken out of their original packaging, "unlocked," all accessories, warranties, and manuals are removed, and, upon information and belief, the Phones are shipped overseas and sold. Defendants undertake these actions for profit, not for the sole purpose of lawfully connecting to a wireless telephone communication network.

27.    Once a T-Mobile Phone has been unlocked, it is operable on other wireless networks.   T-Mobile no longer has a revenue source to recoup the invested subsidy on that Prepaid Phone.

28.    Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells unlocked T-Mobile Prepaid Phones, or T-Mobile Prepaid Phones that they know, or reasonably should know, will be subsequently unlocked and resold under the T-Mobile trademarks as new for a substantial profit.

29.    It is well known that T-Mobile does business worldwide.  In addition to its program "World Class International Service," T-Mobile's website sets forth international roaming rates for T-Mobile Prepaid Phones and for postpaid phones. Additionally, T-Mobile offers mobile phones for rent to specific international destinations.   T-Mobile has substantial and well-deserved goodwill and a hard earned reputation for providing excellence in wireless products and services that are internationally recognized.

30.    Upon information and belief, Defendants have purchased and/or sold large quantities of T-Mobile Prepaid Phones through various co-conspirators.

31.    Upon information and belief, Defendants have actively solicited conspirators to purchase large quantities of T-Mobile Prepaid Phones from retailers and to sell those Phones and/or the SIM cards to them and other conspirators.

32.    Upon information and belief, Defendants, along with others, conspire and work in concert to deceive retailers and circumvent retailers' policies limiting the number of T-Mobile Prepaid Phones an individual may purchase.

33.    Upon information and belief, Defendants direct Runners to acquire bulk quantities of Prepaid Phones from area retailers.  Defendants then purchase the T-Mobile Prepaid Phones from the Runners. Upon information and belief, once Defendants receive the phones from Runners or other co-conspirators, they unlock the T-Mobile Prepaid Phones, and/or they improperly repackage the T-Mobile Prepaid Phones under the T-Mobile Mark, remove all warranties and manuals, fraudulently activate the SIM cards, and traffic and resell the unlocked, counterfeit, and repackaged T-Mobile Prepaid Phones and SIM cards with free airtime to end consumers or to co-conspirators who sell the Phones and SIM cards to end consumers for profit.  Defendants are bulk selling and shipping T-Mobile Prepaid Phones to presently unknown co-conspirators, including buyers outside of the United States, for profit with the intent and knowledge that the T-Mobile Prepaid Phones are, or will be, unlocked.

34.    Defendants are currently advertising "unlocked" T-Mobile Prepaid Phones over the internet through the eBay website, including but not limited to the Samsung T459, Samsung T139, Nokia 1208, and Nokia 1661 model phones. Some of these advertisements are attached hereto as **Composite Exhibit B**.  T-

Mobile's investigators recently purchased an "unlocked" Nokia 1661 T-Mobile Prepaid Phone from Defendants over the internet, which came in a counterfeit Nokia box.

35.    T-Mobile's investigators have witnessed Defendants routinely shopping at Best Buy, and upon information and belief, the Nokia 1661 phone purchased by T-Mobile's investigators was originally sold to Defendants at Best Buy.

36.    T-Mobile's investigators also purchased an "unlocked" Samsung T-139 T-Mobile Prepaid Phone from Defendants.

37.    As recently as May 2010, Defendants were also actively advertising prepaid activation kits over the internet.

**SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT**

38.    Defendants' actions substantially harm T-Mobile by depriving T-Mobile of the opportunity to recoup its losses on the sale of its T-Mobile Prepaid Phones and to earn profits by providing wireless service to legitimate T-Mobile consumers.

39.    As a result of the Defendants' actions, the Phones no longer carry the manufacturer's warranty.  Accordingly, the T-Mobile Prepaid Phones resold by Defendants differ materially from the genuine T-Mobile Prepaid Phones sold by authorized T-Mobile dealers, all of which carry a manufacturer's warranty.

11

40.    In addition, removing the Prepaid Phones from the original packaging and altering the Phones irreparably harms T-Mobile because it deprives T-Mobile of the means to control the quality of its product.

41.    The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing, unlocking, and sale of unlocked and altered T-Mobile Prepaid Phones has also resulted in shortages of available T-Mobile Prepaid Phones, thereby substantially harming T-Mobile and its relationship with retailers and consumers because T-Mobile is not able to supply retailers with sufficient handsets to satisfy the demand from legitimate consumers. As a result, T-Mobile is losing potential consumers to wireless competitors.

42.    Defendants' actions substantially harm T-Mobile and consumers who ultimately purchase T-Mobile handsets that have been improperly unlocked and repackaged.  These unlocked and repackaged T-Mobile Prepaid Phones do not carry the manufacturer's warranty.  Moreover, consumers of the unlocked wireless phones are misled as to the source, sponsorship and origin of their unlocked wireless phone.

43.    The process of unlocking and reselling a T-Mobile Prepaid Phone voids the manufacturer's warranty on the device.  In addition, these unlocked repackaged T-Mobile Prepaid Phones are sold without the original manufacturer's warranty documentation.  Both consumers and T-Mobile are harmed when a T-

Mobile Prepaid Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on unlocked Phones or Phones sold without warranty documentation, consumers who purchase T-Mobile Prepaid Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones.  As a result, T-Mobile's reputation suffers further.

44.    In addition, Defendants' improper and unauthorized resale of T-Mobile Prepaid Phones for use on other networks but still bearing the T-Mobile Marks may result in calls by confused consumers to T-Mobile's customer relations department.  T-Mobile incurs substantial costs associated with such calls and its reputation is further damaged because T-Mobile may be unable to assist those consumers because Defendants' actions voided the warranties and because Defendants sold the Phones for use on another provider's network.   These problems do not exist for legitimate T-Mobile customers who legitimately unlock their Phones.

45.    Defendants' conduct has also resulted in the dilution of the T-Mobile Marks, substantial harm to T-Mobile's business reputation and goodwill and a greater likelihood of confusion, mistake, and deception as to the source of origin of T-Mobile products unlawfully sold by the Defendants and as to the relationship between T-Mobile and Defendants.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

46.     Federal courts have recognized that conduct similar or identical to Defendants' conduct here violates existing civil laws.

47.     In addition to T-Mobile, TracFone Wireless, Inc. ("TracFone"), Nokia Corporation ("Nokia"), AT&T Mobility LLC ("AT&T"), and Virgin Mobile USA, LLC ("Virgin Mobile") have filed various independent lawsuits in numerous federal courts across the country against other defendants similarly engaged in the practice of defrauding legitimate consumers by bulk purchasing prepaid wireless telephones and hacking, repackaging, and reselling the counterfeit prepaid wireless phones for profit.

48.     T-Mobile, AT&T, TracFone, Nokia, and Virgin Mobile have obtained Final Judgments and Permanent Injunctions in these cases, examples of which are attached hereto as **Composite Exhibit C**.  A defendant who failed to abide by an injunction issued by the United States District Court for the Southern District of Texas pled guilty to criminal contempt, and has been sentenced to serve 57 months in prison.   Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit D**.

## COUNT ONE

## BREACH OF CONTRACT

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

49.     By purchasing T-Mobile Prepaid Phones, Defendants acknowledged and agreed to the Terms and Conditions included with each T-Mobile Prepaid Phone as printed on the package and as contained in the printed inserts packaged with the T-Mobile Prepaid Phones.

50.     The Terms and Conditions constitute a valid binding contract between T-Mobile and Defendants.

51.     T-Mobile has performed or tendered performance in accordance therewith.

52.     Defendants have breached the Terms and Conditions by, *inter alia*, purchasing T-Mobile Prepaid Phones with the intent to unlock, repackage, and resell the phones and SIM cards or by otherwise using the T-Mobile Prepaid Phones and SIMs for a fraudulent purpose that negatively impacts T-Mobile's customers, employees, business, ability to provide quality service, and reputation.

53.     T-Mobile has suffered damages as a result of Defendants' breach of the Terms and Conditions.

## COUNT TWO

## FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING
## 15 U.S.C. § 1125 (a)(1)(A) and (B) [§43(a) of the Lanham Act]

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

54.     Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the T-Mobile Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit T-Mobile Prepaid Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the T-Mobile Prepaid Phone package.

55.     Defendants' and/or their co-conspirators' use of the T-Mobile Marks in connection with the sale of unlocked, counterfeit T-Mobile Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between T-Mobile and Defendants.

56.     Defendants' and/or their co-conspirators' unauthorized use of the T-Mobile Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of T-Mobile.

57.     Defendants' and/or their co-conspirators' use of the T-Mobile Marks in connection with the unlocked, counterfeit T-Mobile Phones, which do not include warranties, manuals, accessories and related items made part of the T-Mobile Prepaid Phone package, constitutes a misappropriation of the distinguishing and identifying T-Mobile Marks that was created as a result of significant effort and expense.  Defendants' and/or their co-conspirators' use of the T-Mobile Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with T-Mobile, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by T-Mobile.

58.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, T-Mobile and the reputation and goodwill of T-Mobile, and each has unjustly enriched and will continue to unjustly enrich him, her or itself at the expense of T-Mobile.  T-Mobile is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

59.     Defendants' use of the T-Mobile Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products.

60.     Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).

61.     T-Mobile is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

62.     Defendants knew or should have known that T-Mobile is the exclusive licensee of the T-Mobile Marks and that Defendants had no legal right to use the T-Mobile Marks on their infringing products.  Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiff's lost profits, Defendants' profits, and Plaintiff's attorneys' fees.

## COUNT THREE

### COMMON LAW UNFAIR COMPETITION

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

63.     Defendants' conduct in purchasing and/or inducing others to purchase the Prepaid Phones, disabling or unlocking, inducing others to disable or unlock,

and/or assisting others to disable or unlock the Prepaid Phones, fraudulently activating the SIM cards to pilfer airtime, and reselling and/or assisting others to resell the Prepaid Phones as new for activation on other wireless networks constitutes unfair competition, under the common law of the State of New Jersey.

64.    Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked T-Mobile Prepaid Phones for the purpose of being resold, which undermines T-Mobile's subsidy program, constitutes unfair competition under the common law of the State of New Jersey.   Defendants' conduct complained of herein was intentional, malicious, and willful.

## COUNT FOUR

## CONTRIBUTORY TRADEMARK INFRINGEMENT

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

65.    By misappropriating and using the T-Mobile Marks in connection with the Subsidy Theft Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes the T-Mobile Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

66.    Defendants' unlawful, unauthorized, and unlicensed sale of the unlocked T-Mobile Prepaid Phones has contributed to the creation of express and

implied misrepresentations that the T-Mobile Prepaid Phones, as sold by Defendants, were created, authorized or approved by T-Mobile, and include warranties.

67.     Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase T-Mobile Prepaid Phones altered by Defendants to believe that they are purchasing handsets approved by T-Mobile and containing original warranties.

68.     Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

## COUNT FIVE

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND PROSPECTIVE ADVANTAGE

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

69.     A business relationship, and an expectancy of business relationships, exists between T-Mobile and retailers of T-Mobile Prepaid Phones and prepaid airtime minutes.

70.     A business relationship, and an expectancy of business relationships, exists between T-Mobile and the purchasers and prospective purchasers of its T-Mobile Prepaid Phones and service.

71.    There is a high probability of future economic benefit to T-Mobile as a result of these current and prospective business relationships.

72.    Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between T-Mobile, authorized retailers who sell T-Mobile products, and legitimate T-Mobile customers.

73.    Specifically, but without limitation, Defendants knew that T-Mobile had business relationships with retailers of T-Mobile Prepaid Phones to provide said retailers with sufficient quantities of T-Mobile Prepaid Phones for said retailer's legitimate consumers' use of these T-Mobile Prepaid Phones exclusively on T-Mobile's network.  Defendants' deliberate actions in the Subsidy Theft Scheme have resulted in substantial numbers of T-Mobile Prepaid Phones that are never activated on T-Mobile service and have further caused shortages of available T-Mobile Prepaid Phones, thereby substantially harming T-Mobile and its relationship with retailers because T-Mobile is unable to supply retailers with sufficient Prepaid Phones to satisfy the demands from legitimate consumers. Moreover, Defendants knew that T-Mobile had business relationships with legitimate consumers of T-Mobile Prepaid Phones.  Further, Defendants knew that T-Mobile Prepaid Phones are designed for the exclusive use by T-Mobile

customers on T-Mobile's wireless network.  Defendants also knew that T-Mobile had business relationships with legitimate consumers of T-Mobile prepaid airtime minutes to ensure the proper function and use of T-Mobile Prepaid Phones.

74.     Defendants are intentionally interfering with these relationships through improper means and in violation of the law.

75.     Defendants engaged in these acts of interference with a conscious desire to prevent the relationships from occurring, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

76.     T-Mobile has been proximately damaged and continues to be damaged as a result of Defendants' interference.

## COUNT SIX

## CIVIL CONSPIRACY

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

77.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully bulk purchase, traffic, and resell unlawfully unlocked and altered T-Mobile Prepaid Phones under the T-Mobile Marks and illicitly acquired airtime located on the SIM cards, which results in federal common law and statutory trademark infringement, common law

unfair competition, contributory trademark infringement, and tortious interference with business relationships and prospective advantage.

78.     Defendants knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

79.     T-Mobile has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

## COUNT SEVEN

### UNJUST ENRICHMENT

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

80.     By bulk purchasing the T-Mobile Prepaid Phones at less than the manufacturer cost of the Prepaid Phones for use on wireless networks other than T-Mobile's network, Defendants have obtained benefits from T-Mobile which have led to significant financial gain to Defendants through their resale of the bulk purchased T-Mobile Prepaid Phones.

81.     Further, by dealing in fraudulently-activated T-Mobile SIM cards to illicitly acquire airtime on which they earn a profit, Defendants are being unjustly enriched to T-Mobile's detriment.

82.   Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

83.   Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying T-Mobile the value of the benefits Defendants' acquired.

## COUNT NINE

### CONSPIRACY TO INDUCE BREACH OF CONTRACT

T-Mobile reasserts the allegations set forth above as though fully set forth herein.

84.   Defendants solicit others ("Runners") to purchase T-Mobile Prepaid Phones in bulk for the benefit of Defendants.

85.   Defendants' active solicitation of Runners includes contacting Runners and requesting that they obtain specific brands and models.

86.   T-Mobile had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

87.   Defendants had knowledge of the contracts between T-Mobile and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with T-Mobile.

88.   The breach of the contracts was proximately caused by Defendants' misconduct.

89.    T-Mobile suffered damages as a result.

## DEMAND FOR JURY TRIAL

T-Mobile demands a trial by jury on all triable issues.

WHEREFORE, Plaintiff, T-Mobile USA, Inc., respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of T-Mobile and against Defendants, as follows:

(a) awarding T-Mobile its compensatory, consequential, statutory and special damages including, without limitation, its lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding T-Mobile its reasonable attorneys' fees and costs associated with this action;

(c) awarding T-Mobile permanent injunctive relief against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendants, pursuant to the Lanham Act, to deliver their entire inventory of phones bearing or infringing the T-Mobile Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Dated:  September 9, 2010

       Respectfully submitted,

       **/s/ Stacey K. Sutton_____**
       Stacey K. Sutton
       New Jersey Bar No. 027361999
       James B. Baldinger
       Florida Bar No. 869899
       *Admission Pro Hac Vice Pending*
       CARLTON FIELDS, P.A.
       525 Okeechobee Boulevard, Suite 1200
       West Palm Beach, FL 33401
       Telephone: (561) 659-7070
       Facsimile: (561) 659-7368
       Email:  ssutton@carltonfields.com
          jbaldinger@carltonfields.com

       *Attorneys for T-Mobile USA, Inc.*